**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Nell Jean Starks,**

> *Plaintiff,*

**v.**                                                                 **Case No. 3:14-cv-175**
                                                                        **Judge Thomas M. Rose**

**PNC Bank, National Association,**

> *Defendant.*

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DOC. 17, AND TERMINATING CASE.**

---

Pending before the Court is Defendant's Motion for Summary Judgment. Doc. 17. Therein, Defendant, PNC Bank, National Association, requests that the Court grant Defendant's Motion for Summary Judgment and dismiss with prejudice Plaintiff's claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and race discrimination under the Ohio Civil Rights Act, Ohio Rev. Code §§ 4112.02, 4112.99. Because Plaintiff has no direct evidence that Defendant's decisions not to promote Plaintiff were motivated by animus towards protected classes and because she has no evidence to disprove Defendant's asserted non-discriminatory reasons for terminating her, Defendant's motion will be granted.

**I.      Background**

1

In 1972, Plaintiff started her career with Defendant's predecessor, Central Trust Bank. (Starks Deposition at 28.)   At some point, Plaintiff was hired by National City (later to become PNC Bank) as a "Branch Customer Services Representative III" at the Englewood bank location. (Id at 33.)   Plaintiff was twice promoted, the second time to a "Branch Sales/Service Specialist." In October 2009, Plaintiff's position was reclassified to a familiar sounding Branch Financial Sales Consultant Ill. (See Exhibit 2.)   Plaintiff describes these promotions as role modifications, where her responsibilities, function, authority, and opportunity were never improved.

While at the Westown Branch, Plaintiff applied for a least seven promotions. (See Exhibit 2.)   She received none of them, and the large majority were filled by Caucasian employees. (Id.)

In 2008, the Westown Branch sought to replace its Branch Manager. (Starks Depo at 66.) While Plaintiff, a 35-year bank veteran, applied for this position, Pamela Thrash was hired. (ld. at 164-165.)   Thrash, a Caucasian female, was younger and less experienced than Plaintiff. (See Doc. 18-2, Ex. 2 at p. 6; Defendant Ex. C.)

Plaintiff commenced communicating her observations and concerns to Defendant's Regional Manager, during which she described Thrash as repeatedly violating workplace infractions, committing policy violations, and having a vindictive nature.   In 2011, Plaintiff requested a lateral move to Branch Financial Sales Consultant II at a different, neighboring branch. (Starks Depo at 58, 59.)   Plaintiff was pre-screened for the position on April 7, 2011. (See Exhibit 3.)   The next day, Plaintiff received a Corrective Action from Thrash. (See Exhibit 4.)   Thrash complained to Defendant's Employee Relations Information Center ("ERIC"), Defendant's internal complaint mechanism, about Plaintiff.   Plaintiff contends, however, that Thrash lacked any basis for such a complaint. (See Exhibit 5 at Bate Stamp Number 358.)   Plaintiff, believing

this was manipulation to ensure that Plaintiff was not transferred, informed the same Regional Manager to whom Thrash had issued discipline that Thrash was attempting to interfere with her relocation request. Starks Depo at 65. Plaintiff contends "Defendant's blissful ignorance and acquiescence to such behavior prejudiced Plaintiff."

Two years later, on February 18, 2013, Plaintiff sent an e-mail to Regional Manager Rosemary Martin raising concerns about some requests that Plaintiff had recently received from Thrash. (Starks Dep. at 100 and Ex. 14.) Plaintiff indicated in the e-mail that Thrash asked Plaintiff to provide her with the account number for the bank account that Thrash's daughter, Amanda, held with her estranged husband. (Id. at 99-101 and Ex. 14.) Thrash also asked Plaintiff to put a "CRISS" request on the account so that the account would not be closed due to being overdrawn. (Id. at 101-02 and Ex. 14.) According to Plaintiff, Thrash told her that Amanda would be making a deposit into the account that would bring the account back into good standing, but the deposit had not yet been made. (Id. at Ex. 14.) Although Thrash had no ownership or access rights to her daughter's bank account, Plaintiff provided Thrash with the account number and also placed the request on the account so that the account would not be closed due to being overdrawn. (Id. at 100, 102.) Plaintiff did not speak with Amanda before completing Thrash's request on the bank account. (Id. at 124.)

The next day, Plaintiff called PNC's Employee Relations Information Center ("ERIC") and raised similar concerns to those contained in her e-mail to Martin. (Starks Dep. at 107-08; Complaint, Doc. No. 1, at ¶ 24.) Plaintiff called ERIC because Amanda had not yet deposited the money necessary to bring her account back into good standing, and she was concerned that she should not have completed the request from Thrash to keep the account open. (Starks Dep. at 107.)

Senior Employee Relations Investigator Margaret Alvarez was assigned to investigate Plaintiff's concerns and determine whether any policy violations had occurred. (Alvarez Decl. at ¶ 8.)

As part of her investigation, Alvarez spoke with Plaintiff and received information from Plaintiff via e-mail. (Id. at ¶¶ 9, 10 and Exs. 3 and 4.)   Plaintiff confirmed the information that she had reported to ERIC, and told Alvarez that Amanda's account was still in negative status. (Id. at Ex. 3 at PNC 349.)   Plaintiff also admitted to Alvarez that she had accessed Amanda's account information for Thrash on a number of occasions over the past year. (Id. at Ex. 3 at PNC 350; Starks Dep. at 120 and Ex. 18.)   Plaintiff explained that she would access Amanda's account for Thrash when Thrash wanted to look at a check or print something from the account because Thrash was not supposed to access the account given the conflict of interest because of her relationship to Amanda. (Starks Dep. at 120-21 and Ex. 18; Alvarez Decl. at Ex. 3 at PNC 350.)   Plaintiff told Alvarez that even though Thrash was not a signer on the account, she showed Thrash check activity and printed statements for Thrash from Amanda's account because Thrash was her manager. (Starks Dep. at 125; Alvarez Decl. at Ex. 3 at PNC 351.)   Plaintiff was also aware that Thrash would leave signed withdrawal slips at the Westown Branch for the Branch employees to use to allow Amanda to withdraw money from Thrash's personal account when Thrash was not present at the Branch. (Complaint, Doc. No. 1, at ¶ 22; Starks Dep. at 88, 108-09; Alvarez Decl. at Ex. 3 at PNC 351.)   Alvarez explained to Plaintiff that the investigation should be kept confidential and that Plaintiff should not discuss the matter with anyone. (Starks Dep. at 111.)

Alvarez also spoke with Thrash during her investigation, who denied making any requests of Plaintiff with regard to Amanda's account with her estranged husband. (Alvarez Decl. at Ex. 3 at PNC 349-50.)   After Alvarez spoke with Thrash, Thrash confronted Plaintiff about the

4

information that Plaintiff had reported to ERIC. (Id. at Ex. 4 at PNC 375-76; Starks Dep. at 112-113.) Even though Alvarez had instructed her not to discuss the matter with anyone, Plaintiff spoke with Thrash about the CRISS request that Thrash had asked Plaintiff to place on Amanda's account. (Starks Dep. at 111, 113-14.) In addition, while Thrash was sitting at Plaintiff's desk, Plaintiff pulled up information relating to Amanda's bank account on her computer, which was visible to Thrash. (Id. at 114-15.)

In addition to Plaintiff and Thrash, Alvarez also spoke with the other employees at the Westown Branch as part of her investigation: Customer Service Associate Cynthia Fritz, Teller Banking Representative Hill, Teller Banking Representative Micah Quarmiley and Teller Banking Supervisor Angi Burfield. (Alvarez Decl. at ¶ 10 and Ex. 3 at PNC 351-352.) Both Fritz and Hill admitted that Thrash had requested and that they had provided information to Thrash regarding Amanda's bank account with her estranged husband. (Id. at Ex. 3 at PNC 351-352.) Quarmiley and Burfield both denied that Thrash had ever requested or that they had provided any information to Thrash regarding Amanda's account. (Id. at ¶ 14 and Ex. 3 at PNC 351.)

The Customer and Client Confidentiality section of PNC's Code of Ethics provides, among other things, that employees should not "disclose Confidential Information to a PNC colleague, unless they have a need to know such information in connection with their PNC responsibilities." (Alvarez Decl. at ¶ 4 and Ex. 1.) Based on her investigation, Alvarez concluded that Thrash had violated PNC's Code of Ethics Customer and Client Confidentiality Section, PNC's Conflicts of Interest Policy and was dishonest during the course of the investigation. (Id. at ¶¶ 4, 5, 11 and Exs. 1 and 2.) On March 27, 2013, PNC terminated Thrash's employment. (Id. at ¶ 12.)

Alvarez also concluded that Plaintiff, Fritz and Hill had violated PNC's Code of Ethics

5

Customer and Client Confidentiality Section by disclosing confidential customer information to Thrash, who had no legitimate business reason to have it. (Id. at ¶ 13.) Plaintiff had access to the Code of Ethics throughout her employment with PNC, and received annual training on the Code of Ethics. (Starks Dep. at 46-48.) As a result of their admitted conduct, Alvarez recommended to Regional Manager Martin that Plaintiff, Fritz and Hill be terminated, and Martin agreed. (Alvarez Decl. at ¶ 15.) PNC terminated the employment of Plaintiff, Fritz and Hill on May 9, 2013. (Id. at ¶ 17; Starks Dep. at 130.) PNC's position is that it did not replace Plaintiff following her termination. (Martin Decl., Doc. 18, Exhibit D, at ¶ 10.)

Plaintiff, who is black, was 63 years old at the time of her termination. (Id. at 18.) In addition to Plaintiff, the following Westown Branch employees were also terminated as a result of Alvarez's investigation: Thrash (white, age 50); Hill (white, age 27); and Fritz (black, age 51). (Alvarez Decl. at ¶ 12, 17, 18.) Before Plaintiff was terminated, PNC planned to offer her a Branch Financial Sales Consultant position at the Salem Denlinger Branch after the consolidation. (Martin Decl. at ¶ 11.)

Plaintiff admits that Defendant's Code of Business, Conduct and Ethics affords aggrieved employees recourse. Plaintiff advanced her workplace discrimination concerns through Defendant's ERIC hotline. Plaintiff was counseled to speak with her manager - Thrash - "as she would be most familiar with the situation." See Exhibits 6 and 7.

Plaintiff filed suit in this Court on June 4, 2014, alleging violations of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and race discrimination under the Ohio Civil Rights Act, Ohio Rev. Code §§ 4112.02, 4112.99. At the completion of discovery,

Defendant moved for summary judgment. Doc. 17.   A response, doc. 20, and reply, doc. 21, have been filed, rendering the matter ripe for decision.

## II.     Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.   Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).   Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323.   The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot

rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III. Analysis

A plaintiff pursuing race discrimination claims under Ohio Revised Code § 4112.02 may prevail in one of two ways: either by presenting direct evidence to prove that her employer was motivated by a race-based animus when it took an adverse employment action against her or by presenting indirect evidence of the same. Absent direct evidence of discrimination, a plaintiff must proceed under the burden-shifting, indirect evidence approach set forth in *McDonnell Douglas*

8

*Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Jones v. Kilbourne Med. Labs*., 162 F. Supp. 2d 813, 824 (S.D. Ohio 2000).

Direct evidence is where an employer's statement directly shows discriminatory motive. See *Schlett v. Avco Fin. Servs., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996). The Sixth Circuit stated in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), that evidence that would require the jury to infer a fact is not direct evidence. Direct evidence, in the form of verbal comments, will be similar to an employer telling its employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998). Plaintiff has no direct evidence that any of the actions of which she complains were motivated by race, leaving her to only the avenue utilizing circumstantial evidence established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) to survive summary judgment.

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), when a claim is based on circumstantial evidence, a plaintiff must first establish a *prima facie* case of discrimination, the elements of which vary slightly depending on the theory asserted. Plaintiff alleges, "During her employment with Defendant, Plaintiff was treated differently than comparable white employees, including but not limited to promotional opportunities. Plaintiff applied for the branch manager position that ultimately went to Pamela Thrash, a Caucasian employee." Doc. 1 at 6, ¶¶ 47, 48. She also posits that this was a result of age discrimination: "Plaintiff applied for the branch manager position that ultimately went to a younger employee, Pamela Thrash." To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was

9

> denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*White*, 429 F.3d at 240. A plaintiff's burden at the *prima facie* stage is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action. If the defendant satisfies its burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination.

Here, Plaintiff cannot establish a prima facie case of race or age discrimination based on PNC's failure to promote her to the Branch Manager position at the Westown Branch because she cannot show that she was similarly qualified for the position as Thrash. See *Brown*, 2014 U.S. Dist. LEXIS 138544, at *14, 15. Further, even if Plaintiff could establish a prima facie case of discrimination, she cannot show that PNC's stated reason for offering the position to Thrash was a pretext for discrimination.

Failure to promote claims are particularly difficult to advance via the route of a prima facie case. In cases where "there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006).

The Supreme Court has stated that "qualifications evidence may suffice, at least in some circumstances to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). In *Bender v. Hecht's Department Stores*, 455 F.3d 612, 626 (6th Cir. 2006), the Sixth Circuit held that the

10

probative value of qualifications evidence in terms of demonstrating pretext must be balanced against "the principles that employers are generally 'free to choose among qualified candidates,' [quoting] *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987), and that '[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with,' [quoting] *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)." Thus, "[w]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender*, 455 F.3d at 626. If there is a dearth of other evidence of discrimination, then to survive summary judgment, "the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." Id. at 627.

Here, the only evidence that Plaintiff can point to showing that she was qualified for the Branch Manager position filled by Thrash is the length of time that she spent working at the Westown Branch, and the fact that she was familiar with the Westown Branch and its customers. (Starks Dep. at 166.) Plaintiff concedes, however, that she would have needed additional training before she was qualified for this Branch Manager position. (Id.) By contrast, unlike Plaintiff, Thrash held a master of business administration degree, and had significant experience working as a Branch Manager for both National City and her prior employer. (Goodman Decl. at ¶¶ 4, 5; Starks Dep. at 69.) Given these facts, Plaintiff cannot establish that her qualifications were so significantly better than Thrash's qualifications that no reasonable employer would have chosen Thrash over Plaintiff. See *Bender*, 455 F.3d at 627-28.

11

Plaintiff's belief that she did not receive this promotion because of her race is based on the fact that PNC selected a younger white employee for the position. (Starks Dep. at 167.) It is well-established, however, that Plaintiff's subjective beliefs as to why she did not receive a promotion are insufficient to establish race discrimination. See *Brown*, 2014 U.S. Dist. LEXIS 138544, at *17. Thus, the Court will award Defendant summary judgment on Plaintiff's age and race discrimination claims.

Plaintiff also alleges that she was terminated because of her age and race, and asserts claims against PNC for age discrimination under the ADEA, and race discrimination under the Ohio Civil Rights Act. Again lacking direct evidence of discrimination, the Court will employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. Under this framework, Plaintiff must first establish a prima facie case of discrimination. *Cook*, 2013 U.S. Dist. LEXIS 121074, at *14; *Kumar*, 911 F. Supp. 2d at 584. If Plaintiff establishes a prima facie case, the burden shifts to PNC to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Cook*, 2013 U.S. Dist. LEXIS 121074, at *15; *Kumar*, 911 F. Supp. 2d at 584. If PNC meets this burden of production, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Cook*, 2013 U.S. Dist. LEXIS 121074, at *15-16; *Kumar*, 911 F. Supp. 2d at 584. Still, "the overall burden of persuasion remains with the plaintiff at all times." *Cook*, 2013 U.S. Dist. LEXIS 121074, at *16. Further, with respect to her age discrimination claim, Plaintiff must show that "age was the 'but for' cause of the employer's adverse action." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177

(2009)). As set forth below, Plaintiff cannot establish a prima facie case of race discrimination, or show that PNC's reason for her termination is a pretext for discrimination.

Here, Plaintiff cannot establish the fourth element of her prima facie case of age or race discrimination as she cannot show that she was replaced by someone outside of her protected class, or that she was treated differently than similarly-situated, non-protected employees. *Cook*, 2013 U.S. Dist. LEXIS 121074, at *15; *Kumar*, 911 F. Supp. 2d at 584. PNC did not replace Plaintiff after her termination. (Martin Decl. at ¶ 10.) Further, Plaintiff cannot identify any non-protected employee who engaged in the same conduct and was not also terminated. The evidence is that PNC treated other employees who engaged in the conduct Plaintiff did in the same way, regardless of their age or race. Besides Plaintiff, PNC determined that Thrash (white, age 50) inappropriately requested and accessed confidential customer information that she had no legitimate business reason to access, and that Hill (white, age 27) disclosed confidential customer information to others who had no legitimate business reason to have it. (Alvarez Decl. at ¶ 11, 13, 18.)

The only comparator who Plaintiff identifies as having engaged in the same conduct as her without being terminated is Burfield, who is white and was 48 years old at the time of Plaintiff's termination. (Starks Dep. at 138-40; Alvarez Decl. at ¶ 19.) Plaintiff concedes, however, that she has no knowledge of what Burfield told Alvarez during her investigation, or if Burfield—like Plaintiff—admitted to providing Thrash with information regarding her daughter's bank account. (Starks Dep. at 139-40.) Further, Plaintiff did not recall telling anyone that Burfield had provided Thrash with information regarding Amanda's account. (Id. at 140.) In addition to Burfield, the only other Westown Branch employee not terminated as a result of Alvarez's investigation was

13

Quarmiley, who is also black and was 29 years old at the time. (Alvarez Decl. at ¶¶ 14, 19.)
Alvarez determined that neither Burfield nor Quarmiley disclosed Amanda's confidential account
information to Thrash. (Id. at ¶ 14.) Accordingly, Plaintiff's discriminatory discharge claims
based on her age and race fail at this initial stage of the analysis.

Even assuming that Plaintiff could establish a prima facie case of age or race
discrimination, PNC has met its burden of articulating a legitimate, nondiscriminatory reason for
Plaintiff's termination. PNC asserts it terminated Plaintiff's employment due to her violation of
PNC's Code of Ethics Customer and Client Confidentiality Section by disclosing confidential
customer information to Thrash, who had no legitimate business reason to have it. (Alvarez Decl.
at ¶ 13.) Plaintiff cannot establish that this stated reason for her termination was actually a pretext
for unlawful discrimination.

A plaintiff can establish pretext by showing that the defendant's proffered reason for her
termination: (1) has no basis in fact; (2) did not actually motivate the employer's challenged
conduct; or (3) was insufficient to warrant termination. *Blizzard*, 698 F.3d at 285; *Cook*, 2013 U.S.
Dist. LEXIS 121074, at *16. "A reason cannot be a pretext for discrimination unless it is shown
that the reason is both false and that discrimination was the real reason." *Cook*, 2013 U.S. Dist.
LEXIS 121074, at *16; *Kumar*, 911 F. Supp. 2d at 585.

Here, there is no evidence that PNC's stated reason for Plaintiff's termination has no basis
in fact. Instead, as set forth above, Plaintiff admits to providing Thrash with confidential
information regarding her daughter's bank account, and acknowledges that her actions violated
PNC's Code of Ethics. (Starks Dep. at 114-15, 120, 121, 125, 140-41.) Further, Plaintiff cannot
establish that Defendant's reason for her discharge did not actually motivate Plaintiff's

14

termination or was insufficient to warrant termination because there is no evidence that other employees not in her protected class were not discharged even though they engaged in substantially identical conduct. See *Blizzard*, 698 F.3d at 286-87; *Kumar*, 911 F. Supp. 2d at 590.

The only comparator who Plaintiff alleges engaged in similar conduct but was not terminated is Burfield, who is white and was 48 years old at the time of Plaintiff's termination. (Alvarez Decl. at ¶ 19.)   However, Plaintiff cannot establish that Burfield engaged in substantially identical conduct.   In contrast to Plaintiff, Burfield denied to Alvarez that she had provided Thrash with any information regarding her daughter's bank account, and there was no evidence that she ever engaged in such conduct. (Id. at ¶ 14; Starks Dep. 139-40.) See *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 378, 379 (6th Cir. 2002) (finding that to establish pretext, alleged comparators must be "similar in all of the relevant respects" and have "engaged in misconduct of 'comparable seriousness'"). Despite Plaintiff's claims to the contrary, PNC terminated non-protected employees who engaged in the same conduct as Plaintiff, namely Thrash and Hill. (Alvarez Decl. at ¶¶ 12, 17, 18.)

Plaintiff acknowledges that her conduct in providing Thrash with information regarding Thrash's daughter's bank account violated PNC's Code of Ethics. (Starks Dep. at 140-41.) Plaintiff claims, however, that her conduct should be excused because she was providing this information at the request of her manager, Thrash. (Id.)   According to Plaintiff, she had previously been told by Regional Sales Service and Support Manager Nick Osterfeld that Thrash had certain liberties as the Branch Manager, and that the Westown Branch employees were to do what Thrash asked. (Id. at 75, 91, 125.)   Plaintiff admits, however, that she was never told by anyone that Thrash was allowed to violate the Code of Ethics or PNC policy. (Id. at 141, 143.)

15

Plaintiff counters that, with respect to a Plaintiff's burden of establishing pretext, the United States Supreme Court has held: "The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 147 (2000), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the [employer's] explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves* at 147. Thus, a plaintiff need not always introduce independent evidence of discrimination to show pretext where there is sufficient evidence to reject the employer's explanation. Id. at 148; *Peters v. Lincoln Elec. Co*., 285 F.3d 456,470 (6th Cir. 2002). Here, however, there is no evidence to support rejecting the employer's explanation.

Further undercutting Plaintiff's race discrimination claim, Quarmiley, who is also black, was one of the two Westown Branch employees not terminated as a result of Alvarez's investigation. (Alvarez Decl. at ¶¶ 14, 19.) Additionally, the individuals who made the decision to terminate Plaintiff, Alvarez and Martin, were also in Plaintiff's protected age class, further dispelling any inference of age discrimination in this case. (Id. at ¶ 20; Martin Decl. at ¶ 12.) See *DeBarr v. Cleveland Clinic Found.*, 918 F. Supp. 2d 676, 687 (N.D. Ohio 2013).

There is no evidence that PNC's stated reason for Plaintiff's termination was a pretext for race or age discrimination, or that Plaintiff's age was the "but for" cause of her termination. See *Blizzard*, 698 F.3d at 283. Accordingly, the Court will award summary judgment to Defendant on Plaintiff's discrimination claims.

**IV.    Conclusion**

16

Because Plaintiff has no direct evidence of discrimination and because Plaintiff cannot disprove Defendant's stated non-discriminatory reasons as pretext, Defendant's Motion for summary judgment, doc. 17, is **GRANTED.**  The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, December 21, 2015.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE